**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Turbovets Incorporated, | No. CV-25-04733-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Patriot Claims LLC, *et al.*, | |
| Defendants. | |

Before the Court is Plaintiff's Application for Order to Show Cause and Motion for Temporary Restraining Order (With Notice) and Preliminary Injunction (Doc. 13), and Defendants' Motion to Dismiss First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) (Doc. 18). For the reasons below, the Court denies Plaintiff's Motion for Preliminary Injunction and grants Defendants' Motion to Dismiss.

**I.    BACKGROUND**

Plaintiff, a Texas corporation, develops technology that assists "military veterans in managing and submitting disability and benefits claims." (Doc. 13 at 20 ¶ 3.) Plaintiff's principal technology operations are in Phoenix, Arizona. (*Id*. ¶ 5.) While researching and developing that technology, Plaintiff has operated in "confidential 'stealth mode' to protect its trade secrets, designs, and intellectual property from public disclosure." (*Id*. ¶ 6.) Plaintiff filed a trademark application for the marks "TURBOVETS" and "TURBOVET" and a copyright registration for its platform user interface. (*Id*. ¶¶ 9–10.) While operating in "stealth mode," Plaintiff maintains "strict confidentiality with third parties" and "[a]ny

limited discussions with potential collaborators or partners were conducted under Non-Disclosure Agreements (NDAs)." (*Id*. ¶¶ 12–13.)

In October 2025, Plaintiff discovered that Defendant Patriot Claims LLC, a Texas Corporation, "released a Google Chrome browser extension titled 'TurboVets by VetClaims.AI." (*Id*. ¶ 15.) The browser extension uses Plaintiff's mark "TURBOVETS" and featured a platform user interface like Plaintiff's. (*Id*. ¶¶ 17–18.)

Plaintiff sued Defendants asserting claims for, *inter alia*, trademark and copyright infringement and misappropriation of trade secrets. (*See* Doc. 1-1.) Plaintiff now moves for a primarily injunction to prohibit Defendants from "using Plaintiff's TURBOVETS mark . . . [p]ublishing, promoting, or distributing the Chrome extension titled 'TurboVets by VetClaims.AI'; [d]isplaying, copying, or using Plaintiff's copyrighted and proprietary materials; and [e]ngaging in any act likely to cause confusion as to the affiliation or sponsorship of Defendants' product." (Doc. 13 at 17.)

In response, Defendants argue that the Court lacks personal jurisdiction over them and, therefore, lacks authority to issue the requested injunctive relief. (Doc. 19 at 5.) Defendants separately move to dismiss this action pursuant to Rule 12(b)(2) under a similar theory (Doc. 18 at 5–12). Plaintiff opposed Defendant's Motion, asserting that Defendants engaged unknown third parties to obtain Plaintiff's proprietary information through executing an NDA and targeted Arizona through online advertising. (Doc. 33 at 3–4.) Both motions have been fully briefed.

The Court held an Evidentiary Hearing on April 7, 2026. The parties presented the testimony of one witness each by declaration, Mr. Loomis for Plaintiff (Doc. 13 at 20–23; Doc. 25-1) and Mr. Lukas Simianer, CEO of Patriot Claims LLC, for Defendants (Doc. 18-1). The Court heard the testimony of both Mr. Loomis and Mr. Simianer during cross-examination and re-direct at the Evidentiary Hearing and, after significantly narrowing the issues as announced through its findings and conclusions made on the record, took Plaintiff's Motion for Preliminary Injunction under advisement.

. . .

- 2 -

After the Evidentiary Hearing, Defendants notified the Court that Plaintiff filed a substantially similar lawsuit on April 17, 2026, in the United States District Court for the Eastern District of Texas. (*See* Doc. 51.) According to Defendants, Plaintiff acknowledged to Defendants that "it intends to transfer this case to the Eastern District of Texas," but Defendants contend that venue is improper because Defendants reside within the Western District of Texas. (*Id*. at 3.) As of the time of this Order, Plaintiff has not filed a responsive filing to Defendants' notice.

## II.     LEGAL STANDARD

In order to obtain a preliminary injunction, a plaintiff must show that "(1) [it is] likely to succeed on the merits, (2) [it is] likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in [its] favor, and (4) an injunction is in the public interest." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 9 (2008)). As a threshold matter, though, a district court must have personal jurisdiction over the party against whom an injunction is sought. *Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983); *see also Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) ("Personal jurisdiction, too, is an essential element of the jurisdiction of a district court, without which the court is powerless to proceed to an adjudication.") (citation modified). The party bringing the action has the burden of establishing that personal jurisdiction exists in answering a motion to dismiss or in requesting a preliminary injunction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 741 (9th Cir. 2013).

To establish personal jurisdiction over a nonresident defendant, a plaintiff must show that the forum state's long-arm statute confers jurisdiction over the defendant and that the exercise of jurisdiction comports with constitutional principles of due process. *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 269 (9th Cir. 1995). Arizona's long-arm statute allows the exercise of personal jurisdiction to the same extent as the

United States Constitution and principles of due process. *See* Ariz. R. Civ. P. 4.2(a); *Cybersell v. Cybersell*, 130 F.3d 414, 416 (9th Cir. 1997).

Due process requires that a nonresident defendant have sufficient minimum contacts with the forum state so that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation modified). Personal jurisdiction can be either general or specific. Here, Plaintiff does not dispute that Defendants are not subject to the general personal jurisdiction of Arizona (Doc. 25 at 2), so the Court focuses on the specific personal jurisdiction analysis that "arises out of the defendant's contacts with the forum state giving rise to the subject litigation." *Birder v. Jockey's Guild, Inc.*, 444 F. Supp. 2d 1005, 1008 (C.D. Cal. 2006)

Whether a defendant has sufficient minimum contacts with the forum turns on three elements. *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017). First, the defendant "must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws." *Id.* Second, "the claim must be one which arises out of or relates to the defendant's forum-related activities." *Id.* And third, "the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable." *Id.* The plaintiff bears the burden of satisfying the first two elements while the defendant bears the burden of negating the third. *Id.* All three elements are required for jurisdiction to lie. *Id.* The focus of this analysis is "on the relationship among the defendant, the forum, and the litigation." *Briskin v. Shopify, Inc.*, 135 F.4th 739, 750 (9th Cir. 2025).

"The burden of proof for establishing personal jurisdiction depends on the 'mode of determination' employed by the district court in deciding the issue." *Carpenter v. Sikorsky Aircraft Corp.*, 101 F. Supp. 3d 911, 922 (C.D. Cal. 2015) (citing *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977)). When, as here, a district court must decide personal jurisdiction after an evidentiary hearing is held, "a plaintiff must prove jurisdiction by a preponderance of the evidence." *Id*.

- 4 -

## III.   ANALYSIS

To meet the first element of the minimum effects test, the plaintiff must show the defendant "either (1) purposefully availed himself of the privilege of conducting activities in the forum, or (2) purposefully directed his activities towards the forum." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006) (citation modified). When, as here, a plaintiff's claims sound in tort, courts apply the purposeful direction test. *Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 960 (N.D. Cal. 2015) (applying effects test to copyright and trademark infringement claims); *see Tracer Rsch. Corp. v. Nat'l Env't Servs. Co.*, 42 F.3d 1292, 1295 (9th Cir. 1994) ("The misappropriation of trade secrets . . . is a tort claim.").

To determine whether the defendant's actions constitute purposeful direction, courts apply the "effects" test that was developed in *Calder v. Jones*, 465 U.S. 783, 789–90 (1984) that requires that the nonresident defendant: "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Yahoo!*, 433 F.3d at 1206. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects [it] to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014). In other words, the relationship between the defendant, the forum state, and the litigation "must arise out of contacts that the defendant *himself* creates with the forum State" and not just "the defendant's contacts with persons who reside there." *Id.* at 284.

Plaintiff argues that personal jurisdiction over Defendants exist under three theories: (1) Defendants provided "direction, encouragement, and orchestration" to unknown agents who, in turn, negotiated with Plaintiff and caused the execution of an NDA "that contains a mandatory Arizona forum-selection clause" (Doc. 25 at 2–3); (2) Defendants advertise and sell the browser extension and other services in Arizona (*id*. at 3–4); and (3) Defendants employ six people in Arizona (*id*. at 5). The Court already set forth its reasons for determining that the first two theories fail to establish personal jurisdiction at the Evidentiary Hearing (Hr'g Tr. at 97:4–18), and now turns to the third theory.

### A.    Intentional Act

"[A]n intentional act is 'an external manifestation of the actor's intent to perform an actual, physical act in the real world.'" *Adobe Sys. Inc.*, 125 F. Supp. 3d at 960 (citing *Wash. Shoe Co. v. A–Z Sporting Goods, Inc.*, 704 F.3d 668, 674 (9th Cir. 2012). Here, Defendants do not dispute that the act of employing people is an intentional one, so Plaintiff satisfies the first *Calder* requirement.

### B.    Express Aiming Towards Forum State

"The express aiming analysis depends, to a significant degree, on the specific type of tort or other wrongful conduct at issue." *Id*. (citation modified). This inquiry "requires something more than a foreign act with foreseeable effects in the forum state." *Id*. (citation modified). "Where a defendant knows—as opposed to being able to foresee—that an intentional act will impact another state, then the expressly aimed requirement is satisfied." *Id*. at 960–61 (citation modified). Contacts supporting purposeful direction "must be the defendant's own choice and not random, isolated, or fortuitous." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021).

Here, Plaintiff argues that Defendants' employment of six personnel in Arizona constitutes "intentional outreach to Arizona." (Doc. 25 at 5.) Each of these employees work remotely. (*See* Docs. 25-2–25-6; H'rg Tr. 65:22–66:5, 73:15–23, 76:1–10, 76:23.) In a post-COVID pandemic world, the remote-worker business model is increasingly commonplace. Several district courts have analyzed whether this modern employment structure establishes minimum contacts through a purposeful availment lens, often in cases involving an employment-related dispute. Those courts found that an employer's act of employing someone who works remotely in a state, without more, does not establish jurisdiction over the employer there. *See Kikendall v. Bid My Listing, Inc.*, No. C25-1237-JCC, 2025 WL 3771419, at *3 (W.D. Wash. Dec. 31, 2025) ("Plaintiff's home-based remote work location is not sufficient to trigger personal jurisdiction over an employer's board members—not without more."); *Fields v. Sickle Cell Disease Ass'n of Am., Inc.*, 376 F. Supp. 3d 647, 651 (E.D.N.C. 2018), *aff'd*, 770 F. App'x 77 (4th Cir. 2019) (no minimum

contacts with a forum state from where a remote independent contractor chose to work); *Perry v. Nat'l Ass'n of Home Builders of United States*, No. CV TDC-20-0454, 2020 WL 5759766, at \*5 (D. Md. Sept. 28, 2020) ("In remote-work cases, however, a defendant's mere knowledge that an employee happens to reside in the forum state and conduct some work from home does not constitute purposeful availment."); *LoadStop's Parks v. LoadStop, Inc.*, No. CV H-23-4570, 2024 WL 4452946, at \*6 (S.D. Tex. Apr. 22, 2024) (no minimum contacts where the defendant employed remote residents but did not recruit, travel to, or sought to have work conducted specifically in the forum state); *Waseem v. Stability AI, Inc.*, No. 2:24CV36, 2024 WL 4580401, at \*6 (E.D. Va. Oct. 10, 2024), *adopted*, 2024 WL 5168098 (E.D. Va. Dec. 19, 2024) (no minimum contacts where the plaintiff's physical location was irrelevant to recruitment, hiring, and employment terms). While this Court is presently concerned with the purposeful direction test, these cases are nonetheless informative of the general trends that courts follow when addressing the jurisdictional contours of remote employment.

Here, the narrow question before the Court is whether Defendants' act of employing people who work remotely from Arizona is an act that was expressly aimed at Arizona. In this particular case, it is not. Mr. Simianer testified that Defendants do not employ Arizonans based on their residence here. Rather, Defendants' employees work remotely in all fifty states and abroad; their physical location is simply irrelevant. (Hr'g Tr. at 65:22–66:5, 73:20–23, 76:1–10, 76:23.) Mr. Simianer could not even recall whether the employees whose LinkedIn profile suggested that they lived in Arizona were still physically located here at the time of the Evidentiary Hearing. (Hr'g Tr. at 73:15–23, 76:1–10). Further, Mr. Simianer testified that sales leads are assigned in a "round robin" style across all sales employees, so the work that an employee may conduct is not location specific. (Hr'g Tr. at 71:1–18.) While Mr. Simianer acknowledged that Defendants' sales personnel *may* inform veterans of the free browser extension, there is no evidence that the sales personnel located in Arizona did so, or that sales personnel elsewhere target Arizona-based veterans to recommend the browser extension. Based on the evidence and testimony,

the Court finds that Defendants' contact with Arizona by virtue of employing six remote employees here is the kind of "random, fortuitous, or attenuated contacts [that] are insufficient to create the requisite connection with the forum." *Morrill*, 873 F.3d at 1142.

Plaintiff having failed to satisfy the second *Calder* requirement, the Court need not resolve whether the third was met. Plaintiff does not meet its burden to demonstrate that the Court has personal jurisdiction over Defendants. Accordingly, the Court must deny Plaintiff's request for a preliminary injunction. *See Zepeda*, 753 F.2d at 727.

### C.    Dismissal

The remaining issue before the Court is whether Plaintiff alleges sufficient jurisdictional facts to avoid dismissal under Rule 12(b)(2). Plaintiff alleges nothing more than conclusory facts that Defendants engaged an unknown third-party agent to obtain Plaintiff's materials and released the browser extension online (*see* FAC ¶¶ 5–7, 31–33, 51–55), which are insufficient to withstand Defendants' Motion to Dismiss. *See, e.g.*, *In re Boon Glob. Ltd.*, 923 F.3d 643, 654 (9th Cir. 2019) (Conclusory allegations . . . are insufficient to confer personal jurisdiction. Something more is needed."). Dismissal for want of personal jurisdiction is appropriate here.

### D.    Transfer

While personal jurisdiction does not lie in this Court, it may lie elsewhere. "In an effort to cure jurisdictional defects, 28 U.S.C. § 1631 allows for the transfer of civil actions among federal courts." *Gilmore v. Gonzales*, 435 F.3d 1125, 1134 (9th Cir. 2006). Under Section 1631, a district court that lacks jurisdiction over an action may transfer it "if it is in the interest of justice . . .  to any other such court in which the action or appeal could have been brought at the time it was filed[.]" 28 U.S.C. § 1631. "Because the statute's language is mandatory, federal courts should consider transfer without motion by the parties." *Cruz-Aguilera v. I.N.S.*, 245 F.3d 1070, 1074 (9th Cir. 2001) (citations omitted). Transfer is appropriate "if three conditions are met: (1) the transferring court lacks jurisdiction; (2) the transferee court could have exercised jurisdiction at the time the action was filed; and (3) the transfer is in the interest of justice." *Id*.

Personal jurisdiction lies in Texas where both parties are residents, but it is unclear which district is the proper venue. Defendants contend that the Western district is proper because they reside there. (Doc. 51 at 3.) *See* 28 U.S.C. § 1391(b)(1). Plaintiff, on the other hand, filed a parallel action in the Eastern district alleging that a substantial part of the events or omissions giving rise to its claims occurred there. (Doc. 51-1 ¶ 23.) *See* 28 U.S.C. § 1391(b)(2). Both bases are sufficient to render a venue proper under Section 1391(b). Because the second element of Section 1631 is not clearly established, the Court declines to transfer this matter and dismisses it without prejudice.

**IT IS ORDERED** denying Plaintiff's Application for Order to Show Cause and Motion for Temporary Restraining Order (With Notice) and Preliminary Injunction (Doc. 13).

**IT IS FURTHER ORDERED** granting Defendants' Motion to Dismiss First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) (Doc. 18).

**IT IS FURTHER ORDERED** directing the Clerk of Court to close this matter.

Dated this 21st day of April, 2026.

_____
Honorable John J. Tuchi
United States District Judge